Jordan Gottheim, Esq

MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York , New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
--------------------------------------------------------X
ALEJANDRO GOUNDRY, BREITNER
TARRILLO MEDINA, DAVID SERRANO,
EDISON DANIEL TORRES CABELLO,
FERMIN ARZOLA SILVA, ALEX
NASIPUCHA, CRISTIAN F LUCERO
YUNGANAULA, EDISON FABIAN
BECERRA CABRERA, HARRISON
MARCIAL LEONARDO, HENRY
VENEGAS, ISRAEL PEREZ, JAIRO PEREZ,
JORGE LUIS QUEZADA LEON, JUAN
PABLO LITUMA MOROCHO, LUIS J.
OLORTEGUI COLLAS, NELSON
MAURICIO GUERRERO MARROQUIN,
PABLO CAMPOS ESPINAL, and VICTOR
CAIVINAGUA CAIVINAGUA, *individually and
on behalf of others similarly situated,*

      *Plaintiffs,*

   -against-

MEN OF STEEL ENTERPRISES  LLC
(D/B/A MEN OF STEEL ENTERPRISES),
VOGEL DEVELOPMENT LLC, MEN OF
STEEL REBAR FABRICATORS LLC (D/B/A
MEN OF STEEL REBAR FABRICATORS),
EMPIRE STATE REBAR INSTALL, LLC,
ROBERT VOGELBACHER, MARIO DOE,
FABIAN BRAVO, and RICARDO  ACOSTA,

      *Defendants.*
.............................................................X

        **COMPLAINT**


   **COLLECTIVE ACTION UNDER 29**
     **U.S.C. § 216(b)**

      **ECF Case**

Plaintiffs Alejandro Goundry, Breitner Tarrillo Medina, David Serrano, Edison Daniel Torres Cabello, Fermin Arzola Silva, Alex Nasipucha, Cristian F. Lucero Yunganaula, Edison Fabian Becerra Cabrera, Harrison Marcial Leonardo, Henry Venegas, Israel Perez , Jairo Perez, Jorge Luis Quezada Leon, Juan Pablo Lituma Morocho, Luis  J. Olortegui Collas, Nelson Mauricio Guerrero Marroquin, Pablo Campos Espinal, and Victor Caivinagua Caivinagua, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Men of Steel Enterprises, LLC (d/b/a Men of Steel Enterprises) ("MoS Enterprises"), Vogel Development, LLC ("Vogel Development"), Men of Steel Rebar Fabricators, LLC (d/b/a Men of Steel Rebar Fabricators) ("MoS Rebar"), Empire State Rebar Install, LLC ("ES Rebar") (collectively "Entity Defendants"), Robert Vogelbacher, Mario Doe , Fabian Bravo, and Ricardo Acosta ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

### NATURE OF ACTION

1. Plaintiffs are former employees of Defendants.

2.  Defendants own, operate, or control a construction business with a primary places of business located at, respectively, 2039 US-130, Roebling, NJ 08554 under the name "Men of Steel Enterprises" ("the New Jersey business") and 555 State Road, Suite 101, Bensalem, PA 19020 under the name "Men of Steel Rebar Fabricators" ("the Pennsylvania business").

3. Upon information and belief, individual Defendants Robert Vogelbacher, Mario Doe, Fabian Bravo, and Ricardo Acosta serve or served as owners, managers, principals, or agents of Entity Defendants and operate or operated the Entity Defendants' construction business as a joint or unified enterprise.

4. Plaintiffs were employed in Defendants' construction business as iron workers, steel workers, rebar workers and construction workers at the New Jersey business and/or the Pennsylvania business.

2

5.   At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.   Defendants failed to maintain accurate record keeping of the hours that Plaintiffs worked.

7.   Defendants failed to pay Plaintiffs appropriately, either at the straight rate of pay or for any additional overtime premium, for all hours worked.

8.   Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

10.   At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11.   Plaintiffs now bring this action, on behalf of themselves and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New Jersey Wage and Hour Law, N.J.S.A § 34:11-56a4, *et seq*. ("NJWHL"), including, as provided for in said federal and state statutes, applicable liquidated damages, interest, attorneys' fees and costs.

12.   Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

**<u>JURISDICTION AND VENUE</u>**

13.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

14.   Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this

district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a construction company located in this district. Further, Plaintiffs were employed by Defendants in this district.

**PARTIES**

*Plaintiffs*

15. Plaintiff Alejandro Goundry ("Plaintiff Goundry" or "Mr. Goundry") is an adult individual residing in Bronx County, New York.

16. Plaintiff Goundry was employed by Defendants at the New Jersey business from approximately August 1, 2019 until on or about August 31, 2019.

17. Plaintiff Breitner Tarrillo Medina ("Plaintiff Tarrillo" or "Mr. Tarrillo") is an adult individual residing in Bronx County, New York.

18. Plaintiff Tarrillo was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 29, 2019 until on or about September 1, 2019.

19. Plaintiff David Serrano ("Plaintiff Serrano" or "Mr. Serrano") is an adult individual residing in Queens County, New York.

20. Plaintiff Serrano was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 6, 2019 until on or about July 26, 2019.

21. Plaintiff Edison Daniel Torres Cabello ("Plaintiff Torres" or "Mr. Torres") is an adult individual residing in Queens County, New York.

22. Plaintiff Torres was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 2019 until on or about September 17, 2019.

23. Plaintiff Fermin Arzola Silva ("Plaintiff Arzola" or "Mr. Arzola") is an adult individual residing in Bronx County, New York.

24. Plaintiff Arzola was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 29, 2019 until on or about August 30, 2019.

25. Plaintiff Alex Nasipucha ("Plaintiff Nasipucha" or "Mr. Nasipucha") is an adult individual residing in Hudson County, New Jersey.

26.  Plaintiff Nasipucha was employed by Defendants within the state of New Jersey at the New Jersey business from approximately August 2019 until on or about September 2019.

27.  Plaintiff Cristian F. Lucero Yunganaula ("Plaintiff Lucero" or "Mr. Lucero") is an adult individual residing in Bergen County, New Jersey.

28.  Plaintiff Lucero was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 26, 2019 until on or about August 30, 2019.

29.  Plaintiff Edison Fabian Becerra Cabrera ("Plaintiff Becerra" or "Mr. Becerra") is an adult individual residing in Queens County, New York.

30.  Plaintiff Becerra was employed by Defendants within the state of New Jersey at the New Jersey business from approximately August 4, 2019 until on or about August 29, 2019.

31.  Plaintiff Harrison Marcial Leonardo ("Plaintiff Leonardo" or "Mr. Leonardo") is an adult individual residing in Hudson County, New Jersey.

32.  Plaintiff Leonardo was employed by Defendants within the state of New Jersey at the New Jersey business from approximately August 25, 2019 until on or about September 25, 2019.

33.  Plaintiff Henry Venegas ("Plaintiff Venegas" or "Mr. Venegas") is an adult individual residing in Queens County, New York.

34.  Plaintiff Venegas was employed by Defendants within the state of New Jersey at the New Jersey business from approximately September 1, 2019 until on or about September 15, 2019.

35.  Plaintiff Israel Perez ("Plaintiff Israel" or "Mr. Israel") is an adult individual residing in Kings County, New York.

36.  Plaintiff Israel was employed by Defendants within the state of New Jersey at the New Jersey business from approximately August 2, 2019 until on or about August 24, 2019.

37.  Plaintiff Jairo Perez ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Kings County, New York.

38.  Plaintiff Perez was employed by Defendants within the state of New Jersey at the New

Jersey business from approximately July 2019 until on or about August 2019.

39. Plaintiff Jorge Luis Quezada Leon ("Plaintiff Quezada" or "Mr. Quezada") is an adult individual residing in Queens County, New York.

40. Plaintiff Quezada was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 30, 2019 until on or about September 11,  2019.

41. Plaintiff Juan Pablo Lituma Morocho ("Plaintiff Lituma" or "Mr. Lituma") is an adult individual residing in Queens County, New York.

42. Plaintiff Lituma was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 27, 2019 until on or about August 20,  2019.

43. Plaintiff Luis J. Olortegui Collas ("Plaintiff Olortegui" or "Mr. Olortegui") is an adult individual residing in Hudson County, New Jersey.

44. Plaintiff Olortegui was employed by Defendants within the state of New Jersey at the New Jersey business from approximately August 17, 2019 until on or about August 24, 2019.

45. Plaintiff Nelson Mauricio Guerrero Marroquin ("Plaintiff Guerrero" or "Mr. Guerrero") is an adult individual residing in Queens County, New York.

46. Plaintiff Guerrero was employed by Defendants within the state of New Jersey at the New Jersey business from approximately July 31, 2019 until on or about September 6, 2019.

47. Plaintiff Pablo Campos Espinal ("Plaintiff Campos" or "Mr. Campos") is an adult individual residing in Passaic County, New Jersey.

48. Plaintiff Campos was employed by Defendants within the state of New Jersey at the New Jersey business from approximately August 28, 2019 until on or about September 27, 2019.

49. Plaintiff Victor Caivinagua Caivinagua ("Plaintiff Caivinagua" or "Mr. Caivinagua") is an adult individual residing in Bronx County, New York.

50. Plaintiff Caivinagua was employed by Defendants within the state of New Jersey at the

New Jersey business from approximately July 29, 2019 until on or about August 31, 2019.

*Defendants*

51. At all relevant times, Defendants owned, operated, or controlled a construction company, with a place of business located at 2039 US-130, Roebling, NJ 08554, operating under the name "Men of Steel Enterprises".

52. Upon information and belief, Men of Steel Enterprises LLC (d/b/a Men of Steel Enterprises) is a domestic limited liability company organized and existing under the laws of the State of New Jersey. Upon information and belief, Men of Steel Enterprises LLC (d/b/a Men of Steel Enterprises) maintains a place of business at 555 State Rd #101, Bensalem, PA, 19020.

53. Upon information and belief, Vogel Development is a domestic limited liability company organized and existing under the laws of the State of New Jersey. Upon information and belief, Vogel Development maintains a place of business at 555 State Road, Suite 101, Bensalem, PA 19020.

54. Upon information and belief, Men of Steel Rebar Fabricators LLC (d/b/a Men of Steel Rebar Fabricators) is a domestic limited liability company organized and existing under the laws of the State of New Jersey. Upon information and belief, it maintains a place of business at 555 State Road, Suite 101, Bensalem, PA 19020.

55. Upon information and belief, Empire State Rebar Install, LLC ("Empire State Rebar") is a domestic limited liability company organized and existing under the laws of the State of New York. Upon information and belief, Empire State Rebar maintains its principal place of business at 555 State Road, Suite 101, Bensalem, PA 19020.

56. Defendant Robert Vogelbacher is an individual who resides within the State of New Jersey engaged (or who was engaged) in business in this judicial district during the relevant time period. Defendant Robert Vogelbacher is sued individually in his capacity

7

as owner, officer and/or agent of the Entity Defendants. Defendant Robert Vogelbacher possesses operational control over the Entity Defendants, an ownership interest in the Entity Defendants, and controls significant functions of the Entity Defendants. He determines the wages and compensation of the employees of the Entity Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

57. Defendant Mario Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mario Doe is sued individually in his capacity as a manager of the Entity Defendants. Defendant Mario Doe possesses operational control over the Entity Defendants and controls significant functions of the Entity Defendants. He determines the wages and compensation of the employees, including Plaintiffs, of Defendants, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

58. Defendant Fabian Bravo is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Fabian Bravo is sued individually in her capacity as a manager of the Entity Defendants. Defendant Fabian Bravo possesses operational control over the Entity Defendants and controls significant functions of the Entity Defendants. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

59. Defendant Ricardo Acosta is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ricardo Acosta is sued individually in his capacity as owner, officer and/or agent of the Entity Defendants.

Defendant Ricardo Acosta possesses operational control over the Entity Defendants, an ownership interest in Entity Defendants, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee

records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

60. Defendants operate a construction business with a place of business in Roebling, New Jersey.

61. Individual Defendants Robert Vogelbacher, Mario Doe, Fabian Bravo, and Ricardo Acosta possess operational control over Entity Defendants, possess ownership interests in the Entity Defendants, or control significant functions of the Entity Defendants.

62. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

63. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

64. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers.

65. In the alternative, Defendants constitute a single employer of Plaintiffs and similarly-situated individuals.

66. Upon information and belief, Individual Defendants Robert Vogelbacher and Ricardo Acosta operate one or more of Entity Defendants as either an alter ego of themselves and/or fail to operate one or more of Entity Defendants as an entity legally separate and apart from themselves, by among other things:

   a) failing to adhere to the legal formalities necessary to operate such Entity Defendant(s) as a limited liability company,

   b) defectively forming or maintaining one or more of the Entity Defendants, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Entity Defendant(s) for their own benefit as the sole member(s) or member(s) owning a majority of the equity in the company,

e) intermingling assets and debts of their own with those of Entity Defendant(s),

f) diminishing and/or transferring assets of Entity Defendant(s) to avoid full liability as necessary to protect their own interests, and

g) Other actions evincing a failure to adhere to the limited liability company form.

67. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and the New Jersey Wage and Hour Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of Plaintiffs' employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

68. During 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

69. In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. As an example, numerous items that were used in Defendants' construction businesses on a daily basis were produced outside of the State of New Jersey.

*Individual Plaintiffs*

70. Plaintiffs are former employees of Defendants who were employed as iron workers, steel workers, rebar workers, and construction workers. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alejandro Goundry*

71. Plaintiff Goundry was employed by Defendants within the State of New Jersey from approximately August 1, 2019 until on or about August 31, 2019.

72. Defendants employed Plaintiff Goundry as a construction worker from approximately August 1, 2019 until on or about August 31, 2019.

10

73. In the course of such employment, Plaintiff Goundry regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside of the state of New Jersey.

74. Plaintiff Goundry's work duties required neither discretion nor independent judgment.

75. Throughout his employment with Defendants, Plaintiff Goundry regularly worked in excess of 40 hours per week.

76. From approximately August 1, 2019 until on or about August 30, 2019, Plaintiff Goundry worked from approximately 3:30 a.m. until on or about 8:00 p.m. on Saturdays, from approximately 5:00 a.m. until on or about 10:00 p.m. on Mondays, from approximately 6:00 a.m. until on or about 10:00 p.m. on Tuesdays and Wednesdays, from approximately 5:00 a.m. until on or about 9:00 p.m. on Thursdays, and from approximately 5:30 a.m. until on or about 6:30 p.m. on Fridays (typically 94.5 hours per week).

77. Throughout his employment, Defendants paid Plaintiff Goundry his wages by personal check.

78. From approximately August 1, 2019 until on or about August 30, 2019, Defendants paid Plaintiff Goundry $30.00 per hour.

79. For 46 hours that Plaintiff Goundry worked, Defendants did not pay him any wages.

80. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Goundry regarding overtime and wages under either the FLSA or the NJWHL.

81. Defendants required Plaintiff Goundry to purchase "tools of the trade" with his own funds—including one helmet, one harness, two pliers, one pair of snippers, one pair of cutters, one reeler, and one metro tape.

*Plaintiff Breitner Tarrillo Medina*

82. Plaintiff Tarrillo was employed by Defendants within the state of New Jersey from approximately July 29, 2019 until on or about September 1, 2019.

83. From approximately July 29, 2019 until on or about September 1, 2019, Defendants employed Plaintiff Tarrillo as a construction worker.

11

84. In the course of such employment, Plaintiff Tarrillo regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside of the State of New Jersey.

85. Plaintiff Tarrillo's work duties required neither discretion nor independent judgment.

86. Throughout his employment with Defendants, Plaintiff Tarrillo regularly worked in excess of 40 hours per week.

87. From approximately July 29, 2019 until on or about September 1, 2019, Plaintiff Tarrillo worked from approximately 7:00 a.m. until on or about 8:30 p.m. on Mondays, from approximately 3:00 a.m. until on or about 10:00 p.m. on Tuesdays and Fridays, from approximately 5:00 a.m. until on or about 8:00 p.m. on Wednesdays, Thursdays, and Saturdays, and from approximately 5:00 a.m. until on or about 5:30 p.m. on Sundays (typically 109 hours per week).

88. Throughout his employment, Defendants paid Plaintiff Tarrillo his wages by check.

89. From approximately July 29, 2019 until on or about September 1, 2019, Defendants paid Plaintiff Tarrillo $31.00 per hour.

90. For 61 hours that Plaintiff Tarrillo worked over a two week period (46 hours in one week and 15 hours in the other week), Defendants did not pay him any wages altogether

91. Defendants took improper and illegal deductions from Plaintiff Tarrillo's wages; specifically, during his last two weeks of work, Defendants deducted two hours per day for meal periods that were each only 45 minutes long.

92. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Tarrillo regarding overtime and wages under the FLSA.

93. Defendants did not provide Plaintiff Tarrillo an accurate statement of his wages.

94. Defendants adjusted Plaintiff Tarrillo's paystubs so that they reflected inaccurate wages and hours worked for his last two weeks of work.

95. Defendants required Plaintiff Tarrillo to purchase "tools of the trade," including gloves, with his own funds.

*Plaintiff David Serrano*

96. Plaintiff Serrano was employed by Defendants within the state of New Jersey from approximately July 6, 2019 until on or about July 26, 2019.

97. From approximately July 6, 2019 until on or about July 26, 2019, Defendants employed Plaintiff Serrano as a construction worker.

98. Plaintiff Serrano regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

99. Plaintiff Serrano's work duties required neither discretion nor independent judgment.

100. Throughout his employment with Defendants, Plaintiff Serrano regularly worked in excess of 40 hours per week.

101. From approximately July 6, 2019 until on or about July 26, 2019, Plaintiff Serrano worked from approximately 6:00 a.m. until on or about 10:30 p.m., seven days a week (typically 115.5 hours per week).

102. Throughout his employment, Defendants paid Plaintiff Serrano his wages by personal check.

103. From approximately July 6, 2019 until on or about July 26, 2019, Defendants paid Plaintiff Serrano $30.00 per hour.

104. For 31 overtime hours that Plaintiff Serrano worked during his last week of work, Defendants did not pay Plaintiff Serrano altogether.

105. Plaintiff Serrano was not required to keep track of his time, nor, to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

106. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Serrano regarding overtime and wages under the FLSA.

107. Defendants did not provide Plaintiff Serrano an accurate statement of wages.

108. Defendants adjusted Plaintiff Serrano's paystub so that it reflected inaccurate wages and hours worked for his last week of work.

109. Defendants required Plaintiff Serrano to purchase "tools of the trade" with his own funds—including one pouch, flyers, cutters, one belt, one pair of boots, one snipper, and car gas every week.

*Plaintiff Edison Daniel Torres Cabello*

110. Plaintiff Torres was employed by Defendants from approximately July 2019 until on or about September 17, 2019.

111. From approximately July 2019 until on or about September 17, 2019, Defendants employed Plaintiff Torres as a construction worker.

112. Plaintiff Torres regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the state in which he was working.

113. Plaintiff Torres's work duties required neither discretion nor independent judgment.

114. Throughout his employment with Defendants, Plaintiff Torres regularly worked in excess of 40 hours per week.

115. From approximately July 29, 2019 until on or about August 14, 2019, Plaintiff Torres worked at the New Jersey business from approximately 4:00 a.m. to 5:00 a.m. until on or about 8:00 p.m. to 9:00 p.m., seven days a week (typically 112 hours per week).

116. From approximately August 15, 2019 until on or about August 31, 2019, Plaintiff Torres worked for Defendants within the state of New Jersey from approximately 5:00 a.m. to 6:00 a.m. until on or about 7:00 p.m. to 8:00 p.m., seven days a week (typically 98 hours per week).

117. From approximately September 1, 2019 until on or about September 17, 2019, Plaintiff Torres worked for Defendants at a New York location from approximately 7:00 a.m. until on or about 4:30 p.m. to 5:30 p.m., Mondays through Fridays (typically 50 hours per week).

118. Throughout his employment, Defendants paid Plaintiff Torres his wages by personal check.

119. From approximately July 29, 2019 until on or about August 31, 2019, Defendants paid Plaintiff Torres $32.00 per hour.

120. From approximately September 1, 2019 until on or about September 17, 2019, Defendants

paid Plaintiff Torres $30.00 per hour.

121. Defendants did not pay Plaintiff Torres an extra hour's wages for days on which he worked in New York for a spread of hours (time span between of the beginning of the workday and the end of the workday) greater than ten hours.

122. For 63.5 hours that Plaintiff worked over a five-week Defendants did not pay Plaintiff Torres any wages

123. On a number of occasions, Defendants required Plaintiff Torres to sign a document, the contents of which he was not allowed to review in detail, as a pre-requisite to release his weekly pay.

124. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Torres regarding overtime and minimum wage provisions under the FLSA or state law.

125. Defendants did not provide Plaintiff Torres with an accurate statement of his wages.

126. Defendants adjusted Plaintiff Torres's paystubs so that they reflected inaccurate wages and hours worked for all the weeks he worked.

127.    Defendants did not give any notice to Plaintiff Torres, in English or in Spanish (Plaintiff Torres's primary language), of his rate of pay, employer's regular pay day, and such other information.

128.    Defendants required Plaintiff Torres to purchase "tools of the trade" with his own funds—including one helmet and one pair of red wing shoes.

*Plaintiff Fermin Arzola Silva*

129. Plaintiff Arzola was employed by Defendants within the State of New Jersey from approximately July 29, 2019 until on or about August 30, 2019.

130. Defendants employed Plaintiff Arzola as a construction worker from approximately July 29, 2019 until on or about August 30, 2019.

131. Plaintiff Arzola regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

15

132. Plaintiff Arzola's work duties required neither discretion nor independent judgment.

133. Throughout his employment with Defendants, Plaintiff Arzola regularly worked in excess of 40 hours per week.

134. From approximately July 29, 2019 until on or about August 30, 2019, Plaintiff Arzola worked from approximately 5:00 a.m. to 6:00 a.m. until about 7:30 p.m. to 8:30 p.m., seven days a week (typically 101.5 hours per week).

135. Throughout his employment, Defendants paid Plaintiff Arzola his wages by check.

136. From approximately July 29, 2019 until on or about August 30, 2019, Defendants paid Plaintiff Arzola $30.00 per hour.

137. For 40 overtime hours that Plaintiff Arzola worked during his last week of work, Defendants did not pay Plaintiff Arzola altogether.

138. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Arzola regarding overtime and wages under the FLSA.

139. Defendants did not provide Plaintiff Arzola an accurate statement of wages.

140. Defendants adjusted Plaintiff Arzola's paystub so that it reflected inaccurate wages and hours worked for his last week of work.

141. Defendants required Plaintiff Arzola to purchase "tools of the trade" with his own funds— including two twelve packs of gloves, one tool belt, and three pliers.

*Plaintiff Alex Nasipucha*

142. Plaintiff Nasipucha was employed by Defendants within the State of New Jersey from approximately August 2019 until about September 2019.

143. Defendants employed Plaintiff Nasipucha as a steel worker from approximately August 2019 until on or about September 2019.

144. Plaintiff Nasipucha regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

145. Plaintiff Nasipucha's work duties required neither discretion nor independent judgment.

146. Throughout his employment with Defendants, Plaintiff Nasipucha regularly worked in

excess of 40 hours per week.

147. From approximately August 2019 until on or about September 2019, Plaintiff Nasipucha worked from approximately 5:30 a.m. until on or about 10:00 p.m. on Mondays and Tuesdays, from approximately 5:30 a.m. until on or about 7:30 p.m. on Wednesdays and Saturdays, from approximately 5:30 a.m. until on or about 8:30 p.m. on Thursdays, and from approximately 5:30 a.m. until on or about 9:30 p.m. on Fridays (typically 92 hours per week).

148. Throughout his employment, Defendants paid Plaintiff Nasipucha his wages by personal check.

149. From approximately August 2019 until on or about September 2019, Defendants paid Plaintiff Nasipucha $30.00 per hour, except for approximately one week, for which Defendants did not pay Plaintiff Nasipucha any wages for his work.

150. Defendants took improper and illegal deductions from Plaintiff Nasipucha's wages; specifically, Defendants deducted thirty minutes from Plaintiff Nasipucha's weekly wages any time he arrived to work five minutes later than scheduled.

151. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Nasipucha regarding the overtime and minimum wage laws.

152. Defendants did not provide Plaintiff Nasipucha an accurate statement of wages.

153. Defendants adjusted Plaintiff Nasipucha's paystubs so that they reflected inaccurate wages and hours worked.

154. Defendants required Plaintiff Nasipucha to purchase "tools of the trade" with his own funds—including gloves.

*Plaintiff Cristian F Lucero Yunganaula*

155. Plaintiff Lucero was employed by Defendants within the State of New Jersey from approximately July 26, 2019 until on or about August 30, 2019.

156. Defendants employed Plaintiff Lucero as a steel worker from approximately July 26, 2019 until on or about August 30, 2019.

157. Plaintiff Lucero regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

158. Plaintiff Lucero's work duties required neither discretion nor independent judgment.

159. Throughout his employment with Defendants, Plaintiff Lucero regularly worked in excess of 40 hours per week.

160. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Lucero at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

161. From approximately July 26, 2019 until on or about August 9, 2019, Plaintiff Lucero worked from approximately 7:00 a.m. until on or about 8:00 p.m. to 10:00 p.m. three days a week and from approximately 7:00 a.m. until on or about 6:00 p.m. to 7:00 p.m. four days a week (typically 89.5 hours per week).

162. From approximately August 10, 2019 until on or about August 17, 2019, Plaintiff Lucero worked from approximately 7:00 a.m. until on or about 7:00 p.m., six days a week (72 hours per week).

163. From approximately August 18, 2019 until on or about August 30, 2019, Plaintiff Lucero worked from approximately 7:00 a.m. until on or about 4:00 p.m. to 6:00 p.m., one day a week and from approximately 7:00 a.m. until on or about 4:00 p.m., three days a week (typically 36 to 38 hours per week).

164. Throughout his employment, Defendants paid Plaintiff Lucero his wages by personal check.

165. From approximately July 26, 2019 until on or about August 30, 2019, Defendants paid Plaintiff Lucero $32.00 per hour.

166. For 62 hours that Plaintiff Lucero worked during his employment period (20 hours from his second check, 30 hours from his third check and 12 hours from the last check), Defendants did not pay Plaintiff Lucero any wages.

167. No notification, either in the form of posted notices or other means, was ever given to

Plaintiff Lucero regarding overtime and wage requirements under the FLSA.

168. Defendants did not provide Plaintiff Lucero an accurate statement of wages.

169. Defendants adjusted Plaintiff Lucero's last three paystubs so that they reflected fewer hours (20 fewer hours on the second paycheck, 30 fewer hours on the third paycheck and 12 fewer hours on the last paycheck) than the number of hours that he actually worked.

170.     Defendants did not give Plaintiff Lucero any notice, in English or in Spanish (Plaintiff Lucero's primary language), of his rate of pay, employer's regular pay day, and such other information.

171.     Defendants required Plaintiff Lucero to purchase "tools of the trade" with his own funds—including pliers.

*Plaintiff Edison Fabian Becerra Cabrera*

172. Plaintiff Becerra was employed by Defendants within the State of New Jersey from approximately August 4, 2019 until on or about August 28, 2019.

173. Defendants employed Plaintiff Becerra as a rebar worker from approximately August 4, 2019 until on or about August 28, 2019.

174. Plaintiff Becerra regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

175. Plaintiff Becerra's work duties required neither discretion nor independent judgment.

176. Throughout his employment with Defendants, Plaintiff Becerra regularly worked in excess of 40 hours per week.

177. From approximately August 4, 2019 until on or about August 9, 2019, Plaintiff Becerra worked from approximately 6:00 a.m. until on or about 7:00 p.m., Sundays through Fridays (typically 78 hours per week).

178. From approximately August 12, 2019 until on or about August 27, 2019, Plaintiff Becerra worked from approximately 6:00 a.m. until on or about 7:30 a.m., Mondays through Fridays (typically 67.5 hours per week).

179. On August 28, 2019, Plaintiff Becerra worked from approximately 6:00 a.m. until on or about 1:00 p.m. (approximately 7 hours).

180. Throughout his employment, Defendants paid Plaintiff Becerra his wages by check.

181. From approximately August 4, 2019 until on or about August 28, 2019, Defendants paid Plaintiff Becerra $31.00 per hour.

182. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Becerra at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

183. For 35 hours that he worked in a two week period, Defendants did not pay Plaintiff Becerra any wages.

184. Defendants deducted $31.00 daily from Plaintiff Becerra's weekly paycheck for meals that he never ate.

185. Defendants took improper and illegal deductions from Plaintiff Becerra's wages; specifically, Defendants deducted thirty-five hours from Plaintiff Becerra's weekly wages in the last two weeks that he worked.

186. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Becerra regarding overtime and minimum wage laws.

187. Defendants did not provide Plaintiff Becerra an accurate statement of wages.

188. Defendants adjusted Plaintiff Becerra's paystubs so that they reflected inaccurate wages and hours worked.

189. Defendants required Plaintiff Becerra to purchase "tools of the trade" with his own funds—including five pairs of gloves and one pair of pliers.

*Plaintiff Harrison Marcial Leonardo*

190. Plaintiff Leonardo was employed by Defendants within the state of New Jersey from approximately August 25, 2019 until about September 25, 2019.

191. Defendants employed Plaintiff Leonardo as an iron worker and a construction worker from approximately August 25, 2019 until about September 25, 2019.

192. Plaintiff Leonardo regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

193. Plaintiff Leonardo's work duties required neither discretion nor independent judgment.

194. Throughout his employment with Defendants, Plaintiff Leonardo regularly worked in excess of 40 hours per week.

195. From approximately August 25, 2019 until on or about September 25, 2019, Plaintiff Leonardo worked from approximately 5:00 a.m. until on or about 7:00 p.m. to 8:00 p.m., Mondays through Fridays, from approximately 5:00 a.m. until on or about 11:00 p.m., Saturdays, and from approximately 5:00 a.m. until on or about 6:00 p.m., Sundays (typically about 103.5 hours per week).

196. Throughout his employment, Defendants paid Plaintiff Leonardo his wages by check.

197. From approximately August 25, 2019 until about September 25, 2019, Defendants paid Plaintiff Leonardo $31.50 per hour.

198. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Leonardo at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

199. Defendants did not pay Plaintiff Leonardo any wages for 48 hours he worked.

200. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Leonardo regarding overtime and minimum wage laws.

201.    Defendants required Plaintiff Leonardo to purchase "tools of the trade" with his own funds—including five pairs of gloves, one pair of steel toe boots, and one pair of safety glasses.

*Plaintiff Henry Venegas*

202. Plaintiff Venegas was employed by Defendants within the State of New Jersey from approximately September 1, 2019 until on or about September 15, 2019.

203. Defendants employed Plaintiff Venegas as a steel worker from approximately September 1, 2019 until on or about September 15, 2019.

204. Plaintiff Venegas regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

205. Plaintiff Venegas's work duties required neither discretion nor independent judgment.

206. Throughout his employment with Defendants, Plaintiff Venegas regularly worked in excess of 40 hours per week.

207. From approximately September 1, 2019 until on or about September 15, 2019, Plaintiff Venegas worked from approximately 5:00 a.m. to 6:00 a.m. until on or about 6:00 p.m. to 8:00 p.m. five days a week and from approximately 7:00 a.m. until on or about 3:00 p.m., one day a week (about 78 hours per week).

208. Throughout his employment, Defendants paid Plaintiff Venegas his wages by personal check.

209. From approximately September 1, 2019 until on or about September 15, 2019, Defendants paid Plaintiff Venegas $30.00 per hour.

210. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Venegas at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

211. Defendants did not pay Plaintiff Venegas any wages for 10 hours he worked.

212. Defendants took improper and illegal deductions from Plaintiff Venegas's wages; specifically, Defendant deducted ten hours from Plaintiff Venega's weekly wages.

213. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Venegas regarding overtime and wages under the FLSA.

214. Defendants did not provide Plaintiff Venegas an accurate statement of wages.

215. Defendants adjusted Plaintiff Venegas's paystub so that it reflected inaccurate wages and hours worked.

*Plaintiff Israel Perez*

216. Plaintiff Israel was employed by Defendants within the State of New Jersey from approximately August 2, 2019 until on or about August 24, 2019.

217. Defendants employed Plaintiff Israel as a construction worker from approximately August 2, 2019 until on or about August 24, 2019.

218. Plaintiff Israel regularly handled goods in interstate commerce, such as construction

materials and other supplies produced outside the State of New Jersey.

219. Plaintiff Israel's work duties required neither discretion nor independent judgment.

220. Throughout his employment with Defendants, Plaintiff Israel regularly worked in excess of 40 hours per week.

221. From approximately August 2, 2019 until on or about August 24, 2019, Plaintiff Israel worked from approximately 4:00 a.m. to 5:00 a.m. until on or about 6:00 p.m. to 10:00 p.m. seven days a week (on average about 109.5 hours per week).

222. Throughout his employment, Defendants paid Plaintiff Israel his wages by check.

223. From approximately August 2, 2019 until on or about August 24, 2019, Defendants paid Plaintiff Israel $26.00 per hour.

224. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Israel at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

225. Defendants did not pay Plaintiff Israel any wages for 70 hours he worked.

226. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Israel regarding overtime and minimum wage laws.

227. Defendants did not provide Plaintiff Israel an accurate statement of wages.

228.   In fact, Defendants adjusted Plaintiff Israel's pay stubs so that they reflected inaccurate hours worked.

229. Defendants required Plaintiff Israel to purchase "tools of the trade" with his own funds—including a self-retracting line.

*Plaintiff Jairo Perez*

230. Plaintiff Perez was employed by Defendants within the state of New Jersey from approximately July 2019 until on or about August 2019.

231. Defendants employed Plaintiff Perez as a construction worker and iron worker from approximately July 2019 until on or about August 2019.

232. Plaintiff Perez regularly handled goods in interstate commerce, such as construction

23

materials and other supplies produced outside the State of New Jersey.

233. Plaintiff Perez's work duties required neither discretion nor independent judgment.

234. Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

235. From approximately July 1, 2019 until on or about July 15, 2019, Plaintiff Perez worked from approximately 4:00 a.m. to 5:00 a.m. until on or about 10:00 p.m., 7 days a week (typically 105 to 112 hours per week).

236. From approximately July 16, 2019 until on or about July 22, 2019, Plaintiff Perez worked from approximately 4:00 a.m. to 5:00 a.m. until about 10:00 p.m., 6 days a week (typically 72.5 to 78.5 hours per week).

237. From approximately July 23, 2019 until on or about August 3, 2019, Plaintiff Perez worked from approximately 6:00 a.m. until about 7:00 p.m. to 9:00 p.m., 7 days a week (typically 91 to 105 hours per week).

238. From approximately August 4, 2019 until on or about August 11, 2019, Plaintiff Perez worked from approximately 6:00 a.m. until about 7:00 p.m. to 9:00 p.m., 6 days a week (typically 78 to 90 hours per week).

239. Throughout his employment, Defendants paid Plaintiff Perez his wages by check.

240. From approximately July 2019 until on or about August 2019, Defendants paid Plaintiff Perez $30.00 per hour.

241. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Perez at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

242. For 39 hours that Plaintiff Perez worked in a one-week period, Defendants did not pay Plaintiff Perez any wages.

243. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA.

244. Defendants did not provide Plaintiff Perez an accurate statement of wages.

245. In fact, Defendants adjusted Plaintiff Perez's paystub so that it reflected inaccurate wages and hours worked for his last week of work.

246. Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information.

247. Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including two cutters and one pincer.

*Plaintiff Jorge Luis Quezada Leon*

248. Plaintiff Quezada was employed by Defendants within the State of New Jersey from approximately July 30, 2019 until on or about September 11, 2019.

249. Defendants employed Plaintiff Quezada as a construction worker from approximately July 30, 2019 until on or about September 11, 2019.

250. Plaintiff Quezada regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

251. Plaintiff Quezada's work duties required neither discretion nor independent judgment.

252. Throughout his employment with Defendants, Plaintiff Quezada regularly worked in excess of 40 hours per week.

253. From approximately July 30, 2019 until on or about September 11, 2019, Plaintiff Quezada worked from approximately 4:00 a.m. until about 7:00 p.m. to 10:00 p.m. seven days a week (about 99.5 hours per week).

254. Throughout his employment, Defendants paid Plaintiff Quezada his wages by personal check.

255. From approximately July 30, 2019 until on or about September 11, 2019, Defendants paid Plaintiff Quezada $30.00 per hour.

256. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Quezada at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

257. Defendants did not pay Plaintiff Quezada any wages for 38 hours he worked in a one-week period.

258. Additionally, Defendants did not pay Plaintiff Quezada any wages for his work his last week of employment.

259. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Quezada regarding overtime and minimum wage laws

260. Defendants did not provide Plaintiff Quezada an accurate statement of wages.

261. Defendants adjusted Plaintiff Quezada's paystubs so that they reflected inaccurate wages and hours worked.

262. Defendants required Plaintiff Quezada to purchase "tools of the trade" with his own funds—including two pliers, one reeler, and one harness.

*Plaintiff Juan Pablo Lituma Morocho*

263. Plaintiff Lituma was employed by Defendants within the State of New Jersey from approximately July 27, 2019 until on or about August 20, 2019.

264. Defendants employed Plaintiff Lituma as an iron worker and a construction worker from approximately July 27, 2019 until on or about August 20, 2019.

265. Plaintiff Lituma regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

266. Plaintiff Lituma's work duties required neither discretion nor independent judgment.

267. Throughout his employment with Defendants, Plaintiff Lituma regularly worked in excess of 40 hours per week.

268. From approximately July 27, 2019 until on or about August 20, 2019, Plaintiff Lituma worked from approximately 4:00 a.m. to 7:00 a.m. until about 9:00 p.m. to 10:00 p.m. seven days a week (typically about 103 hours per week).

269. Throughout his employment, Defendants paid Plaintiff Lituma his wages by personal check.

270. From approximately July 27, 2019 until on or about August 20, 2019, Defendants paid

26

Plaintiff Lituma $30.00 per hour.

271. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Lituma at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

272. For 40 hours that Plaintiff Lituma worked, Defendants did not pay him any wages.

273. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lituma regarding overtime and minum wage laws

274. Defendants did not provide Plaintiff Lituma an accurate statement of wages.

275.      In fact, Defendants adjusted Plaintiff Lituma's paystubs so that they reflected inaccurate wages and hours worked.

276.      Defendants required Plaintiff Lituma to purchase "tools of the trade" with his own funds—including pins.

*Plaintiff Luis J. Olortegui Collas*

277. Plaintiff Olortegui was employed by Defendants within the State of New Jersey from approximately August 17, 2019 until on or about August 25, 2019.

278. Defendants employed Plaintiff Olortegui as a rebar worker from approximately August 17, 2019 until on or about August 25, 2019.

279. Plaintiff Olortegui regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

280. Plaintiff Olortegui's work duties required neither discretion nor independent judgment.

281. Throughout his employment with Defendants, Plaintiff Olortegui regularly worked in excess of 40 hours per week.

282. From approximately August 17, 2019 until on or about August 23, 2019, Plaintiff Olortegui worked from approximately 7:30 a.m. until about 8:30 p.m. on Saturday, from approximately 6:00 a.m. until about 4:30 p.m. on Sunday, from approximately 6:30 a.m. until on or about 4:00 p.m. on Monday, from approximately 10:30 a.m. until on or about 4:45 p.m. on Tuesday, from approximately 5:00 a.m. until about 3:30 p.m. on Wednesday,

from approximately 6:30 a.m. until about 6:00 p.m. on Thursday, and from approximately

4:30 a.m. until about 11:30 p.m. on Friday (about 80.25 hours per week).

283. From approximately August 24, 2019 until on or about August 25, 2019, Plaintiff Olortegui

worked from approximately 5:00 a.m until about 5:00 p.m. to 8:00 p.m., Saturday to

Sunday (approximately 24-27 hours).

284. Throughout his employment, Defendants paid Plaintiff Olortegui his wages by personal

check.

285. From approximately August 17, 2019 until on or about August 24, 2019, Defendants paid

Plaintiff Olortegui $30.00 per hour.

286. Throughout his employment with Defendants, Defendants failed to pay Plaintiff

Olortegui at a rate of one-and-a-half times his regular hourly rate for hours that he

worked in excess of 40 hours per week.

287. For approximately one day's work, Defendants did not pay Plaintiff Olortegui any wages

for his work.

288. Defendants deducted $60 from Plaintiff Olortegui's weekly paycheck for meals he never

ate.

289. No notification, either in the form of posted notices or other means, was ever given to

Plaintiff Olortegui regarding overtime and wages under the FLSA.

290. Defendants did not provide Plaintiff Olortegui an accurate statement of wages.

291. In fact, Defendants adjusted Plaintiff' Olortegui's paystubs so that they reflected inaccurate

wages and hours worked.

292. Defendants required Plaintiff Olortegui to purchase "tools of the trade" with his

own funds—including one harness, three pliers, one reel, one pouch, one spirit level, one

helmet, and a pair of gloves.

*Plaintiff Nelson Mauricio Guerrero Marroquin*

293. Plaintiff Guerrero was employed by Defendants in the State of New Jersey from

approximately July 31, 2019 until on or about September 6, 2019.

28

294. Defendants employed Plaintiff Guerrero as a rebar worker and a steel worker from approximately July 31, 2019 until on or about September 6, 2019.

295. Plaintiff Guerrero regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

296. Plaintiff Guerrero's work duties required neither discretion nor independent judgment.

297. Throughout his employment with Defendants, Plaintiff Guerrero regularly worked in excess of 40 hours per week.

298. From approximately July 31, 2019 until on or about September 6, 2019, Plaintiff Guerrero worked approximately 67 hours the first week, 73 hours the second week, 60 hours the third week, 66.25 hours the fourth week and 62 hours the fifth week.

299. Throughout his employment, Defendants paid Plaintiff Guerrero his wages by check.

300. From approximately July 31, 2019 until on or about September 6, 2019, Defendants paid Plaintiff Guerrero $30.00 per hour.

301. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Guerrero at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

302. Defendants did not pay Plaintiff Guerrero for 32 hours he worked during his last week of work; specifically, defendants deducted 32 hours from Plaintiff Guerrero's last paycheck.

303. Defendants did not provide Plaintiff Guerrero an accurate statement of wages.

304. In fact, Defendants adjusted Plaintiff Guerrero's paystubs so that they reflected inaccurate wages and hours worked for his last week of work.

305.      Defendants required Plaintiff Guerrero to purchase "tools of the trade" with his own funds—including one helmet, one harness, two pairs of pliers and one pouch.

*Plaintiff Pablo Campos Espinal*

306. Plaintiff Campos was employed by Defendants from approximately August 28, 2019 until on or about September 27, 2019.

307. Defendants employed Plaintiff Campos as an iron worker from approximately August 28,

29

2019 until on or about September 27, 2019.

308. Plaintiff Campos regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

309. Plaintiff Campos's work duties required neither discretion nor independent judgment.

310. Throughout his employment with Defendants, Plaintiff Campos regularly worked in excess of 40 hours per week.

311. From approximately August 28, 2019 until on or about September 3, 2019, Plaintiff Campos worked at the New Jersey business from approximately 5:00 a.m. until about 6:00 p.m. to 7:00 p.m. seven days a week (about 90.5 hours per week).

312. From approximately September 4, 2019 until on or about September 10, 2019, Plaintiff Campos worked at the New Jersey business from approximately 6:00 a.m. until about 7:00 p.m. two days a week and from approximately 6:00 a.m. until on or about 7:30 p.m. five days a week (typically 95.5 hours per week).

313. From approximately September 11, 2019 until on or about September 19, 2019, Plaintiff Campos worked in the State of New Jersey at the New Jersey business from approximately 5:00 a.m. until about 6:00 p.m. seven days a week (typically 91 hours per week).

314. From approximately September 20, 2019 until on or about September 27, 2019, Plaintiff Campos worked at the Pennsylvania business from approximately 7:00 a.m. until about 4:00 p.m. five days a week (about 45 hours per week).

315. From approximately August 28, 2019 until on or about September 11, 2019, Defendants paid Plaintiff Campos his wages by check.

316. From approximately September 12, 2019 until on or about September 27, 2019, Defendants paid Plaintiff Campos his wages by personal check.

317. From approximately August 28, 2019 until on or about September 27, 2019, Defendants paid Plaintiff Campos $30.00 per hour.

318. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Campos at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess

of 40 hours per week.

319. Moreover, for 50 hours that he worked, Defendants did not pay Plaintiff Campos any wages

320.     Defendants granted Plaintiff Campos a constantly interrupted meal break of approximately 15 to 30 minutes.

321.     Nevertheless, Defendants deducted $15 daily from Plaintiff Campo's weekly paycheck for meals he never ate.

322. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Campos regarding overtime and minimum wage laws

323. Defendants did not provide Plaintiff Campos an accurate statement of wages.

324.      In fact, Defendants adjusted Plaintiff Campos' paystub so that it reflected inaccurate wages and hours worked for his third week of work.

325.     Defendants did not give any notice to Plaintiff Campos, in English and in Spanish (Plaintiff Campos's primary language), of his rate of pay, employer's regular pay day, and such other information.

326.     Defendants required Plaintiff Campos to purchase "tools of the trade" with his own funds—including one pair of tweezers, one harness, one helmet, a pair of shoes, a uniform, and one measuring tape.

*Plaintiff Victor Caivinagua Caivinagua*

327. Plaintiff Caivinagua was employed by Defendants in the state of New Jersey from approximately July 29, 2019 until on or about August 31, 2019.

328. Defendants employed Plaintiff Caivinagua as a construction worker from approximately July 29, 2019 until on or about August 31, 2019.

329. Plaintiff Caivinagua regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New Jersey.

330. Plaintiff Caivinagua's work duties required neither discretion nor independent judgment.

331. Throughout his employment with Defendants, Plaintiff Caivinagua regularly worked in excess of 40 hours per week.

31

332. From approximately July 29, 2019 until on or about August 31, 2019, Plaintiff Caivinagua worked from approximately 4:00 a.m. until about 9:00 p.m. to 10:00 p.m. seven days a week (typically 118 to 126 hours per week).

333. Throughout his employment, Defendants paid Plaintiff Caivinagua his wages by personal check.

334. From approximately July 29, 2019 until on or about August 31, 2019, Defendants paid Plaintiff Caivinagua $30.00 per hour.

335. Throughout his employment with Defendants, Defendants failed to pay Plaintiff Caivinagua at a rate of one-and-a-half times his regular hourly rate for hours that he worked in excess of 40 hours per week.

336. Defendants did not pay Plaintiff Caivinagua's any wages for his last week of work.

337. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Caivinagua regarding overtime and wages under the FLSA.

338. Defendants did not provide Plaintiff Caivinagua an accurate statement of wages.

339.    In fact, Defendants adjusted Plaintiff Caivinagua's paystub so that it reflected inaccurate wages and hours worked for his last week of work.

340.    Defendants required Plaintiff Caivinagua to purchase "tools of the trade" with his own funds—including paying for a hotel to be near the work site, and costs for transportation to and from the worksite.

*Defendants' General Employment Practices*

341.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

342.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and state law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

343.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required overtime rate.

344.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

345.     Defendants paid Plaintiffs their wages by check or by personal check.

346.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and/or state laws.

347.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

348.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and state laws.

349.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and/or former workers.

350.     Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

## **FLSA COLLECTIVE ACTION CLAIMS**

351.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated

damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

352.      At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

353.      The claims of Plaintiffs stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

354.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

355.      At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

356.      At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

357.      Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

358.      For some hours worked, Defendants failed to pay Plaintiffs (and the FLSA Class members) at or above the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

359.      Defendants' failure to pay Plaintiffs (and the FLSA Class members) at or above the

34

applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

360. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

361.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

362.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

363.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

364.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE NEW JERSEY

## WAGE AND HOUR LAW

365.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

366.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the New Jersey Wage and Hour Law (NJWHL), N.J.S.A § 34:11-56a4, *et seq.* Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

367.     For some hours worked in the State of New Jersey, Defendants failed to pay each of Plaintiffs at or above the applicable minimum hourly rate under the NJWHL.

368.     Defendants' failure to pay Plaintiffs at or above the applicable minimum hourly rate was willful within the meaning of the NJWHL.

369. Plaintiffs were damaged in an amount to be determined at trial.

35

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE NJWHL**

370.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

371.     Defendants, in violation of the NJWHL, N.J.S.A § 34:11-56a4, et seq., failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in the State of New Jersey in excess of forty hours in a work week.

372.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of the NJWHL

373.     Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE NEW YORK LABOR LAW**

374.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

375.     At all times relevant to this action, Defendants were Plaintiff Torres' employers within the meaning of the New York Labor Law (NYLL) §190 *et seq.* and §650 *et seq.* Defendants had the power to hire and fire Plaintiff Torres, controlled the terms and conditions of his employment, and determined the rate and method of any compensation in exchange for his employment.

376.     For some hours worked in the state of New York, Defendants failed to pay Plaintiff Torres at or above the applicable minimum hourly rate under the NYLL.

377.     Defendants' failure to pay Plaintiff Torres at or above the applicable minimum hourly rate was willful within the meaning of the NYLL.

378.  Plaintiff Torres was damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE NYLL**

379.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

36

380.   Defendants, in violation of NYLL §190 *et seq.* and §650 *et seq.*, failed to pay Plaintiff Torres overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in the state of New York excess of forty hours in a work week.

381.   Defendants' failure to pay Plaintiff Torres overtime compensation was willful within the meaning of the NYLL

382.   Plaintiff Torres was damaged in an amount to be determined at trial.

<u>**SEVENTH CAUSE OF ACTION**</u>

**VIOLATION OF THE SPREAD OF HOURS PROVISION OF THE NEW YORK WAGE ORDER**

383.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

384.   Defendants, in violation of NYLL §§ 650 et seq. and 12 N.Y.C.R.R. §§ 146-1.6, failed to pay Plaintiff Torres an extra hour's pay for each day in which he worked in New York on which the beginning of the workday occurred more than ten hours before the end of the workday.

385.   Defendants' failure to pay Plaintiff Torres spread-of-hours compensation was willful within the meaning of the New York Wage Order.

386.   Plaintiff Torres was damaged in an amount to be determined at trial.

<u>**EIGHTH CAUSE OF ACTION**</u>

**VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW**

387.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

388.   Defendants failed to provide Plaintiff Torres with a written notice, in English and in Spanish (Plaintiff Torres' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different;

and the telephone number of the employer, as required by NYLL §195(1).

389.    Defendants are liable to Plaintiff Torres in the amount of $5,000, together with costs and attorneys' fees.

### NINTH CAUSE OF ACTION

**VIOLATION OF THE WAGE STATEMENT PROVISIONS
OF THE NEW YORK LABOR LAW**

390.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

391.    With each payment of wages, Defendants failed to provide Plaintiff Torres with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

392.    Defendants are liable to Plaintiff Torres in the amount of $5,000, together with costs and attorneys' fees.

### TENTH CAUSE OF ACTION

**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE PENNSYLVANIA
MINIMUM WAGE ACT (PMWA)**

393.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

394.    At all times relevant to this action in which Plaintiff Campos worked in Pennsylvania, Defendants were Plaintiff Campos' employers within the meaning of the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. Labor § 333.104 et seq., Defendants had the power to hire and fire Plaintiff Campos, controlled the terms and conditions of his employment, and determined the rate and method of any compensation in exchange for his employment.

395.    For some hours worked in the Commonwealth of Pennsylvania, Defendants failed

to pay Plaintiff Campos at or above the applicable minimum hourly rate under the

PMWA.

396.     Defendants' failure to pay Plaintiff Campos at or above the applicable minimum

hourly rate was willful within the meaning of the PMWA.

397.  Plaintiff Campos was damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE PMWA

398.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

399.     Defendants, in violation of 43 P.S. Labor § 333.104 et seq., failed to pay Plaintiff

Campos overtime compensation at a rate of one and one-half times the regular rate of pay

for each hour worked in the Commonwealth of Pennsylvania in excess of forty hours in a

work week.

400.     Defendants' failure to pay Plaintiff Campos overtime compensation was willful

within the meaning of the PMWA

401.     Plaintiff Campos was damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

402.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

403.     Defendants required Plaintiffs to pay, without reimbursement, the costs and

expenses for purchasing and maintaining equipment and "tools of the trade" required to

perform their jobs, further reducing their wages in violation of the FLSA. 29 U.S.C. §

206(a); 29 C.F.R. § 531.35.

404.     Plaintiffs were damaged in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

Defendants by:

(a)      Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)      Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)      Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(i)       Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(j)       Awarding Plaintiffs damages, costs, and attorneys' fees for Defendants' violation

of their rights to minimum wage and overtime under the NJWHL;

(k)    Awarding Plaintiff Torres damages (including liquidated damages), costs, and attorneys' fees, for Defendants violation of his rights to minimum wage, overtime pay, spread of hours pay, wage statements, and wage notices pursuant to the NYLL and teh accompanying Wage Order of the New York Commissioner of Labor;

(l)    Awarding Plaintiff Campos damages, costs, and attorneys' fees, for Defendants' violation of his rights to minimum wage and overtime compensation for all hours worked pursuant to the PMWA;

(m)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York New York

February 19, 2020.

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:       /s/ Jordan Gottheim
           Jordan Gottheim, Esq (223232017)
           60 East 42nd Street, Suite 4510
           New York, New York 10165
           Telephone: (212) 317-1200
           Facsimile: (212) 317-1620
           *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 30, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Alejandro Goundry

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      30 de septiembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 30, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            Breitner Tarrillo Medina

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:            30 de septiembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 9, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Cristian F Lucero Yunganaula (a.k.a. Mijin)

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                      *Cristian Lucero*

Date / Fecha:                             9 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 30, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Edison Daniel Torres Cabello

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    30 de Septiembre

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 16, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Edison Fabian Becerra Cabrera (a.k.a Fabian Becerra)

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              16 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 9, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Fabian Ricardo Bravo Mendez

Legal Representative / Abogado: Sign   Michael Faillace & Associates, P.C.

/ Firma:

Date / Fecha:                    9 de Octubre del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 30, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Fermin Arzola

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    30 de septiembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 4, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Harrison Marcial Leonardo

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                  4 de Octubre

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 9, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Henry Venegas

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      *Henry Venegas*

Date / Fecha:                           9 de Octubre 2019

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 8, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            Israel Perez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:            8 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

October 1, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                          Jairo Perez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          1 de Octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 2, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jorge Luis Quezada Leon

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     2 de octubre 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                   Telephone: (212) 317-1200
New York, New York 10165                                       Facsimile: (212) 317-1620
—————

Faillace@employmentcompliance.com

October 4, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:              Luis J Olortegui Collas

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               4 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 1, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Nelson Mauricio Guerrero Marroquin

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               1 de Octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 4, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Pablo Campos Espinal

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:              _pablo campos_

Date / Fecha:                   4 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Ramon Ruiz

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           3 de Octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                 Victor Caivinagua Caivinagua

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                  1 de octubre 2019